THOMAS LEE NEELEY *v.* STATE OF INDIANA.

[No. 1276S439. Filed November 15, 1978.]

*Harriette Bailey Conn,* Public Defender of Indiana, *Kyle M. Payne,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *Dennis K. McKinney,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Neeley pleaded guilty to robbery while armed, on February 28, 1974, in the St. Joseph Superior Court. He was sentenced to a determinate term of twenty years imprisonment. Appellant petitioned the St. Joseph Superior Court for post-conviction relief pursuant to Ind. R. P.C. 1 in July of 1975. After a hearing, this petition was denied on October 21, 1977, and the present appeal follows.

Two issues are raised in this appeal: (1) whether the trial court erroneously failed to make certain findings as required by the post-conviction rules, and; (2) whether appellant was adequately advised of the consequences of a guilty plea and the constitutional rights waived by his guilty plea.

I.

The first issue we must consider here is a procedure followed by the court pursuant to interpretation of our rule, Ind. R. P.C. 1 § 4(c). The appellant had first filed his petition under Ind. R. P.C. 1 pro se. Later, on March 26, 1976, appellant's counsel, Deputy Public Defender Peter Bullard, filed a motion to amend by interlineation as appellant in his pro se petition had not included all possible grounds for relief according to him.

Ind. R. P.C. 1 § 4(c) provides:

"At any time prior to entry of judgment the court may grant leave to withdraw the petition, and the petitioner shall be given leave to amend the petition as a matter of right."

It was the state's contention that a proper interpretation of this section would be that appellant should first have moved to withdraw his petition, and then he would have had a right to amend it and refile it. The state's position was that since the petition was not withdrawn, the amendment by interlineation was improper and therefore, the court should strike it. The appellant contends that the rule does not contemplate the ritual of withdrawing the petition, amending it, and then refiling it. The appellant contends that this section provides for two separate actions. That is, at any time prior to judgment the petitioner may withdraw his petition and the court may grant leave to withdraw if good cause can be shown and no undue prejudice to the state results. Further, the petitioner shall be given leave to amend the petition as a matter of right at any time prior to judgment regardless of whether or not he withdraws the petition. The appellant contends that this latter provision gives the petitioner the right to amend his petition to present all questions to the court that it may feel are at issue, and has nothing to do with the withdrawal provision.

In this case, the court took the matter of the state's motion to strike the amendment by interlineation under advisement, and allowed the parties to present all of their evidence on the issues here, including those raised in the amendment by interlineation. In its judgment, the court agreed with the position taken by the state and found that the issue raised by the appellant in his amendment by interlineation had been waived, and therefore the court did not consider any relief defendant might be entitled to thereunder. The issue raised in the amendment by interlineation was that the appellant did not knowingly, voluntarily and intelligently enter a plea of guilty in the original trial because the court had failed to apprise

him of certain constitutional and statutory rights, and that he was therefore denied due process of law under the Fourteenth Amendment of the United States Constitution and Article 1, § 12 of the Indiana Constitution.

We feel the appellant's interpretation of this § 4(c) of Ind. R. P.C. 1 is the correct one, and that the trial court improperly refused to consider the evidence on the issues raised in the amendment by interlineation. A proper interpretation of this rule is that the petitioner has a conditional right to withdraw a previously filed petition for post-conviction relief, but it is not an absolute right and may be granted by the trial court absent any overriding prejudice which may result to the state by allowing the petitioner to withdraw his petition. The second phrase of Ind. R. P.C. 1 § 4(c) grants the petitioner an absolute right to amend a present petition for post-conviction relief prior to judgment. This is consistent with the total purpose of the post-conviction rules which envisions simplification of the post-conviction procedures by requiring petitioner to present all of his reviewable issues in one petition, in order to avoid a multiplicity of post-conviction petitions.

However, we can address this issue on the merits without remanding this cause to the trial court to make findings and conclusions on issues raised in the amendment by interlineation, as all of the evidence is in the record. As stated above, the trial court took the state's motion to strike under advisement and permitted the parties to put all of their evidence in the record. A complete transcript of the guilty plea and the sentencing of the appellant as well as the testimony of all the parties including appellant on this issue or in the record. Furthermore, appellant himself has asked the court to review this issue on the merits and brief all of the issues on the merits. We therefore consider all issues raised by appellant on the merits, including those raised in his amendment by interlineation.

## II.

The essential claim in this appeal is that appellant was denied due process of law, because he was not adequately advised either of the consequences of his guilty plea or of the constitutional rights waived by his guilty plea.

The record of appellant's 1974 guilty plea demonstrates that appellant pleaded guilty to robbery while armed, in return for the state's dropping of two other charges, inflicting injury in the commission of an armed robbery and assault with intent to kill. Appellant was told by the prosecutor, through his attorney, that the prosecutor would recommend a ten-year sentence for this crime to the judge. This offer was phrased in terms of a recommendation by the prosecutor, and appellant was aware of that. The record demonstrates that the prosecutor in fact recommended to the judge that appellant be sentenced to a minimum of ten years imprisonment. Further, the record demonstrates that appellant was advised by the judge, at the time of the guilty plea, that the judge was not bound by the prosecutor's recommendation. Appellant replied that he understood all this and had no questions. After appellant entered his guilty plea, the judge sentenced appellant to twenty years imprisonment, instead of ten years. Appellant's understanding of this transaction is borne out by his testimony at the post-conviction hearing, under questioning by his attorney Mr. Bullard:

Q. All right, how was it phrased to you to make you think you were going to get a ten year sentence?

A. He [Neeley's trial attorney] said he talked to the prosecutor, Mr. Ready, and he said he was going to recommend that I get a ten flat.

Q. Mr. Ready was going to recommend that you get a ten flat?

A. Right.

. . . .

Q. [N]ow referring to the transcript of your guilty plea, I mean, its apparent from this transcript that you were advised that there was the recommendation of the state, is that correct?

A. Yes.

Q. And I believe the Court also specifically advised you that the Court is not bound by the recommendation of the State. Do you recall the Judge saying that to you?

A. Yes, I do.

Q. All right, now, did you understand what that meant at the time?

A. Well, I understood—what I thought. I understood, he didn't have to go by what Mr. Ready recommended.

Entered in 1974, this guilty plea was entered before the effective date of Ind. Code § 35-5-6-2 (Burns Supp 1978), which was July 29, 1975. After that date, if the judge rejects the prosecutor's initial recommendation, subsequent recommendations may be filed. At any rate, the law is clear that the trial judge is not bound by the promises or recommendations made by the prosecuting attorney. *Watson* v. *State,* (1973) 261 Ind. 97, 300 N.E.2d 354. Appellant was advised of this rule, advised of his alternatives and of the consequences of a guilty plea, and proceeded to plead guilty. We thus find that appellant was fully advised of the consequences of his plea and was not, as he claims here, tricked or wrongfully induced, and that his plea was knowing, voluntary, and intelligent in this respect.

As to the claim that appellant was not fully advised of the constitutional rights waived by a guilty plea, appellant's argument focuses on this language from *Boykin* v. *Alabama,* (1969) 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279:

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 12 L.Ed.2d 653, 84 S.Ct. 1489. Second, is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145, 20 L.Ed.2d 491, 88 S.Ct. 1444. Third, is the right to confront one's accusers. Pointer v. Texas, 380 U.S. 400, 13 L.Ed.2d 923, 85 S.Ct. 1065."

This court has held that the above language mandates that the defendant, at a guilty plea, be personally advised by the trial judge of the three constitutional trial rights enumerated in *Boykin*. *Hollingshed* v. *State*, (1977) 266 Ind. 597, 365 N.E.2d 1215; *Williams* v. *State*, (1977) 266 Ind. 373, 363 N.E.2d 971. Further, the present guilty plea was entered after the effective date of Ind. Code § 35-4.1-1-3 (Burns 1975), which codifies this language from *Boykin* and also makes advisement of these three trial rights mandatory.

In the present case, appellant admits that he was fully advised of, and understood, the first two trial rights enumerated in *Boykin*, namely the privilege against self-incrimination and the right to trial by jury. The record demonstrates that appellant was so fully advised, and waived these rights. However, at the post-conviction hearing, appellant claimed that his 1974 guilty plea was not knowing, voluntary, and intelligent, because the trial judge failed to advise him that he had the right to "confront his accusers."

The record of appellant's guilty plea shows that the court at that time referred to depositions taken of the state's witnesses by appellant's attorney. The court then asked appellant if this all met with his approval, and appellant said it did. The court then advised appellant of the trial rights hereinabove referred to, and concluded by asking appellant, "If you have a trial, you have a right to subpoena people to come in and testify, and if you plead guilty you waive that, you understand that?" Appellant replied, "Yes." At the post-conviction hearing in this case, the following statements were made by appellant in response to questioning by his attorney Mr. Bullard:

Q. . . . What does it mean to plead guilty to a ten flat?

A. What does it mean?

Q. Yes.

A. That means that I'm violating my rights to a trial by jury and confront my accusers.

On the basis of the above record, we find that appellant was advised of his right of confrontation, and knowingly, voluntarily, and intelligently waived that right. In the case of *Jones* v. *State*, (1969) 253 Ind. 235, 352 N.E.2d 572, this court considered the analogous question of what words were necessary to convey the rights advisements required pursuant to *Miranda* v. *Arizona*, (1966) 384 U.S. 436, 88 S.Ct. 1602, 16 L.Ed.2d 694. This court quoted with approval the following passage from *Coyote* v. *United States*, (10th Cir. 1967) 380 F.2d 305, 308, *cert. denied*, (1967) 389 U.S. 992, 88 S.Ct. 489, 19 L.Ed.2d 484:

> "Surely Miranda is not a ritual of words to be recited by rote according to didactic niceties. What Miranda does require is meaningful advice to the unlettered and unlearned in language which he can comprehend and on which he can knowingly act. We will not indulge semantical debates between counsel over particular words used to inform an individual of his rights. The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all of his rights.
>
> "It is, of course, always open to an accused to subjectively deny that he understood the precautionary warning and advice with respect to the assistance of counsel. When the issue is raised in an admissibility hearing, i.e. see McHenry v. United States, 10 Cir., 308 F.2d 700, it is for the court to objectively determine whether in the circumstances of the case the words used were sufficient to convey the required warning."

*Jones, supra,* 253 Ind. at 243, 252 N.E.2d at 576. We think the same reasonable teaching applicable to the advisement of *Miranda* rights is applicable to the advisement of *Boykin* rights.

Of course, the preferred practice would be for the trial judge to follow Ind. Code § 35-4.1-1-3 (Burns 1975), to the letter. Advising the defendant of his trial rights precisely as described therein would be a fool-proof procedure of insuring against claims such as are

raised in the present case. This advisement is to be transcribed and placed into the record as provided by law. Ind. R. Crim. P. 10. In the present case, we find only that on the basis of the entire record the defendant was advised of and understood the substance of his "right to confront his accusers," though he was not advised specifically in those words.

The judgment of the trial court is affirmed.

Givan, C.J., Hunter, J., concur.

Prentice, J., dissents with opinion in which DeBruler, J., concurs.

### DISSENTING OPINION

PRENTICE, J.—I dissent to the majority holding upon issue II. I must acknowledge that the record discloses that the defendant *probably* understood his constitutional rights and entered the guilty plea knowingly and intelligently. Had the trial judge followed the simple mandate of Ind. Code § 35-4.1-1-3 (Burns 1975), however, I could eliminate the word "probably," from that statement, and this case could have been disposed of summarily.

Since the adoption of Criminal Rule 10 (formerly Rule 1-11, adopted December 1, 1946), we have moved steadily and correctly towards assuring that guilty pleas are entered voluntarily, knowingly and intelligently and that the record of the guilty plea hearing reflect as much. We have been aided by the adoption of the aforementioned statute, effective July 26, 1973, which clearly spells out specific advisements that the *trial judge* shall render before accepting a guilty plea. The rule and the statute combine to eliminate the necessity for trial judge in post-conviction proceedings and appellate judges reviewing such proceedings to be frustrated by such cases as *Brimhall* v. *State,* (1972) 258 Ind. 153, 279 N.E.2d 557; *Conley* v. *State,* (1972) 259 Ind. 29, 284 N.E.2d 803; *Williams* v. *State,* (1975) 263 Ind. 165, 325 N.E.2d 827; *Emert* v. *State,* (1975) 263 Ind. 340, 330 N.E.2d 750; *Avery* v. *State,* (1976) 265 Ind. 417, 355 N.E.2d 395; *Hollingshed*

v. *State*, (1977) 266 Ind. 597, 365 N.E.2d 1215. Justice Hunter in his footnote to *Williams* v. *State, supra,* and *Emert* v. *State, supra,*[1] made it clear that cases arising subsequent to the effective date of the statute would be governed not only by what the record disclosed but with who made the record, as well. This is not to say that we should be more concerned with the form than with the substance but, rather, that when, as here, the form is clearly prescribed and is for the considered purpose of assuring substantive compliance, it is altogether appropriate that adherence to the form be strictly required. I, therefore, would hold compliance with Ind. Code § 35-4.1-1-3 to be a jurisdictional prerequisite to the acceptance of a guilty plea.

DeBruler, J., concurs.

NOTE.—Reported at 382 N.E.2d 714.

---

1. "If the plea had been entered after the effective date of July 26, 1973, we would have a different question entirely in this case under P.L. 325, Acts 1973, being IC 1971, 35-4.1-1-3, Ind. Stat. § 9-1204, which provides:

'Defendant advised by court.—The court shall not accept a plea of guilty from the defendant without first addressing the defendant and

'(a) determining that he understands the nature of the charge against him;

'(b) informing him that by his plea of guilty he is admitting the truth of all facts alleged in the indictment or information to an offense included thereunder and that upon entry of such plea the court shall proceed with judgment and sentence;

'(c) informing him that by his plea of guilty he waives his rights to a public and speedy trial by jury, to face the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to require the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself;

'(d) informing him of the maximum possible sentence and minimum sentence for the offense charged and of any possible increased sentence by reason of the fact of a prior conviction or convictions, and of any possibility of the imposition of consecutive sentences;

'(e) informing him that the court is not a party to any agreement which may have been made between the prosecutor and the defense and is not bound thereby.'

If this statutory standard had been applicable at the time of defendant's plea, and if the record was identical to the one before us, defendant would undoubtedly have presented a solid case for post-conviction relief."